1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| MARVIN DONIUS, | CASE NO. 10cv591-WQH-POR |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| BO MAZZETTI; STEPHANIE SPENCER; CHARLIE KOLB; DICK WATENPAUGH; STEVE STALLINGS; KENNY KOLB; DOE I AND DOE II, | |
| Defendants. | |

HAYES, Judge:

The matters before the Court are the following motions filed by Defendants: Motion to Dismiss Complaint (Doc. # 7); Ex Parte Application Requesting Judicial Notice of Supplemental Authorities (Doc. # 14); and Ex Parte Application for Request for Judicial Notice (Doc. # 15).

## I.  Background

This action concerns tribal regulation of non-Indian fee simple land located within the boundaries of the reservation of the Rincon Band of Luiseno Mission Indians.  Defendants are tribal officials sued in their individual and official capacities.  (Compl. ¶ 4, Doc. # 1).

On March 22, 2010, Plaintiff Marvin Donius initiated this action by filing the Complaint for Declaratory Relief and for Injunctive Relief ("Complaint").  (Doc. # 1).

### A.  Allegations of the Complaint

In 1989, Plaintiff purchased property from Rincon Mushroom Corporation of America

- 1 -

1   ("RMCA") which is located within the boundaries of the Rincon Band of Luiseno Mission

2   Indians' reservation.  *Id*. ¶¶ 11, 12.  In 1960, the property was "allotted and conveyed out of

3   Tribal ownership by a Bureau of Indian Affairs fee patent."  *Id.* ¶ 10.  The property is located

4   in an open portion of the reservation across a San Diego County highway from the Harrah's

5   Rincon Casino & Resort.  *Id.* ¶ 12.  Plaintiff is not an Indian or a member of the tribe.  *Id.* ¶ 8.

6   RMCA is, and was at all relevant times, a California corporation comprised entirely of non-

7   Indian shareholders.  *Id*.

8          "[A]t least four years ago, and continuing to the present date, the Rincon Tribe ... and

9   from time to time the Tribal defendants ... have devised, and have attempted to implement and

10  effectuate, a plan ... to acquire ... 'on the cheap' [Plaintiff's] five-acre parcel."  *Id*. ¶ 14.  The

11  plan "has included various efforts by these defendants to diminish and depreciate the value of

12  [the] subject property."  *Id*. ¶ 15.

13         On March 15, 1960, the Rincon Tribe enacted Articles of Association, which state that

14  the "Rincon Tribal Business Committee ... shall have jurisdiction over the lands within the

15  boundaries of the Rincon Reservation."  *Id*. ¶ 19.  "In ... April 2007, ... the Rincon Tribe

16  enacted a Tribal Environmental Policy Ordinance that ... purportedly placed under the

17  governmental jurisdiction of the Tribe the subject parcel, on the asserted basis that the Tribe's

18  regulatory authority extended to and included all land within the exterior boundaries of the

19  Rincon Reservation."  *Id*. ¶ 20 (quotations omitted).  "[T]he Rincon Tribe enacted an

20  Environmental Enforcement Code that as revised on ... July 10, 2007 purported to extend tribal

21  environmental regulatory authority over and as to [the] subject property, on the basis of the

22  Tribe's claim of such authority over all lands within the exterior boundaries of the Rincon

23  Indian Reservation."  *Id*. ¶ 21 (quotations omitted).  "On ... September 30, 2008, these

24  defendants caused the Rincon Tribe to enact a Tribal Court Jurisdiction Ordinance that

25  purported to claim regulatory as well as *in personam* and subject matter adjudicative

26  jurisdiction over non-tribal member [RMCA], non-tribal member Donius, and as to subject

27  non-tribal fee property, ... and also purports to extend the Tribe's Territorial Jurisdiction over

28  any fee lands within the external boundaries of the Rincon Reservation...."  *Id*. ¶ 22 (quotations

1  omitted).

2       The first cause of action of the Complaint seeks a judicial declaration that "any

3  prospective or future actual or attempted enforcement by these defendants of" the above-

4  referenced Articles of Association, Tribal Environmental Policy Ordinance, Environmental

5  Enforcement Code, and Tribal Court Jurisdiction Ordinance is "facially unconstitutional,

6  unconstitutional as applied, and/or illegal, and/or entirely unenforceable, pursuant to applicable

7  provisions of federal and California law, both with respect to plaintiff as well as concerning

8  subject property." *Id*. ¶ 23(a).  "[P]laintiff contends that this Court should find, declare and

9  adjudge that neither the Rincon Tribe nor the above-named Tribal defendants presently have,

10  nor in the future could as a matter of law have, any regulatory or adjudicative authority of any

11  nature whatever over or as to plaintiff and/or over or as to subject property...." *Id*. ¶ 23(d).

12       The second cause of action of the Complaint seeks the issuance of "a permanent

13  injunction requiring and ordering that the above-named Tribal defendants desist and refrain

14  from any further actual or attempted enforcement, prospectively and in the future, of any and

15  all purported Rincon Tribe regulatory or adjudicative authority over or as to plaintiff and/or

16  over or as to subject property." *Id*. ¶ 29.

17       The Complaint does not seek monetary relief.

18  **B.      Procedural History**

19       On March 14, 2010, Defendants filed the Motion to Dismiss pursuant to Federal Rules

20  of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(7).  (Doc. # 7).  On May 14, 2010 and

21  September 1, 2010, Defendants filed evidence in support of the Motion to Dismiss.  (Doc. #

22  7-9, 14-18).  On June 7, 2010, Plaintiff filed evidence in opposition to the Motion to Dismiss.

23  (Doc. # 10).

24  **II.      Motion to Dismiss**

25       Defendants' Motion to Dismiss is brought pursuant to Federal Rules of Civil Procedure

26  12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and

27  12(b)(7) (failure to join a party under Rule 19).  (Doc. # 7).  A Rule 12(b)(1) motion asserting

28  lack of subject matter jurisdiction may be either a facial attack on the sufficiency of the

1  pleadings or a factual attack on the basis for a court's jurisdiction.  *See White v. Lee*, 227 F.3d

2  1214, 1242 (9th Cir. 2000).   "In resolving a factual attack on jurisdiction, the district court

3  may review evidence beyond the complaint without converting the motion to dismiss into a

4  motion for summary judgment." *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The

5  court need not presume the truthfulness of the plaintiff's allegations."  *Id.* (citing *White*, 227

6  F.3d at 1242).  However, "[j]urisdictional finding of genuinely disputed facts is inappropriate

7  when the jurisdictional issue and substantive issues are so intertwined that the question of

8  jurisdiction is dependent on the resolution of factual issues going to the merits of an action."

9  *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983).

10  Motions pursuant to Federal Rule of Civil Procedure 12(b)(2) challenge personal

11  jurisdiction. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff

12  bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble*

13  *Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  A plaintiff must "make only a

14  prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Id.*

15  "[U]ncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts

16  between the facts contained in the parties' affidavits must be resolved in plaintiff's favor."

17  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).

18  ### A.   Sovereign Immunity

19  Defendants contend "tribal sovereign immunity bars Plaintiff's claims against tribal

20  Defendants because plaintiff seeks relief against the Tribe."  (Doc. # 7-1 at 11).  Plaintiff

21  contends that Defendants are not entitled to assert tribal sovereign immunity because the Tribe

22  lacks regulatory jurisdiction over the land at issue, so all attempts to regulate the land exceed

23  the scope of tribal authority.  Plaintiff contends that the allegations of the Complaint that

24  Defendants acted "under an authority not validly conferred" defeats sovereign immunity.

25  (Doc. # 10 at 4-5).

26  "Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331

27  to challenge tribal [] jurisdiction." *Elliot v. White Mountain Apache Tribal Court*, 566 F.3d

28  842, 846 (9th Cir. 2009).  "Under the doctrine of *Ex Parte Young*, immunity does not extend

1 | to [tribal] officials acting pursuant to an allegedly unconstitutional statute." *Burlington*

2 | *Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007) (citing *Ex Parte*

3 | *Young*, 209 U.S. 123, 155-56 (1908)). "In determining whether *Ex Parte Young* is applicable

4 | to overcome the tribal officials' claim of immunity, the relevant inquiry is only whether

5 | [plaintiff] has alleged an ongoing violation of federal law and seeks prospective relief." *Id.*

6 | (citation omitted).

7 |       Plaintiff has adequately alleged that Defendants were acting pursuant to an invalid tribal

8 | ordinance which exceeds the scope of the Tribe's regulatory jurisdiction. The Complaint seeks

9 | prospective relief. Accordingly, Defendants' motion to dismiss the Complaint based on

10 | sovereign immunity is denied. *See id.*; *see also Burlington N. R.R. Co. v. Blackfeet Tribe*, 924

11 | F.2d 899, 901 (9th Cir. 1991) ("[T]ribal sovereign immunity does not bar a suit for prospective

12 | relief against tribal officers allegedly acting in violation of federal law."), *overruled on other*

13 | *grounds by Big Horn County Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000).

14 |       **B.**     **Exhaustion of Tribal Remedies**

15 |             **1.**     **Contentions of the Parties**

16 |       Defendants contend that Plaintiff was required to exhaust available tribal remedies

17 | before filing a federal court claim. (Doc. # 7-1 at 21-25). Defendants contend that "[t]he Tribe

18 | [has] colorable jurisdiction to regulate Plaintiff's conduct under the Second *Montana*

19 | Exception. Plaintiff's unregulated land use activities on his property pose fire and water

20 | contamination hazards that are demonstrably serious threats to the Tribe's political integrity,

21 | economic security, or health or welfare." (Doc. # 12 at 1).

22 |       Plaintiff contends that exhaustion is not required because it is clear that the Tribal Court

23 | lacks jurisdiction. Plaintiff contends that "*Montana* Exception Two as properly construed

24 | *totally proscribes* the exertion of any and all regulatory and/or adjudicative authority by the

25 | Rincon Tribe and/or by defendants as to plaintiff and his property." (Doc. # 10 at 21).

26 |             **2.**     ***Montana*'s Second Exception**

27 |       Tribal governments have been divested of sovereignty over "relations between an

28 | Indian tribe and nonmembers of the tribe." *Montana v. United States*, 450 U.S. 544, 564

1   (1981) (quotation omitted).   Tribal governments have no jurisdiction over non-members

2   "beyond what is necessary to protect tribal self-government or to control internal relations."

3   *Id.*  Tribes have some authority to regulate nonmembers on tribal lands, but as a general rule,

4   tribes may not regulate nonmembers on non-Indian land within the boundaries of the

5   reservation.  *Id.* at 564-65.   There are two exceptions to that general rule; only the second

6   exception is at issue in this case: "a tribe may exercise 'civil authority over the conduct of

7   non-Indians on fee lands within the reservation when that conduct threatens or has some direct

8   effect on the political integrity, the economic security, or the health or welfare of the tribe.'"

9   *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S. Ct. 2709, 2720 (2008)

10   (quoting *Montana*, 450 U.S. at 565).  This exception is "limited," and "cannot be construed in

11   a manner that would swallow the rule or severely shrink it."  *Id.* (quotations omitted).   The

12   conduct at issue "must do more than injure the tribe, it must imperil the subsistence of the

13   tribal community." *Id*. at 2726 (quotation omitted).  "The burden rests on the tribe to establish

14   one of the exceptions to *Montana*'s general rule that would allow an extension of tribal

15   authority to regulate nonmembers on non-Indian fee land."  *Id.* at 2720.

16   **3.   Exhaustion**

17   There is a general rule that if a non-Indian defendant is haled into a tribal court and

18   asserts that the tribal court lacks jurisdiction, the defendant must exhaust tribal remedies before

19   seeking to enjoin the tribal proceeding in federal court.  *See Nat'l Farmers Union Ins. Co. v.*

20   *Crow Tribe of Indians*, 471 U.S. 845 (1985).  Even when there is no pending proceeding in

21   tribal court, a nonmember plaintiff may not sue in federal court asserting that the tribe lacks

22   regulatory authority over nonmember actions taken on non-Indian land within a reservation

23   without exhausting tribal court remedies.  *See Burlington N. v. Crow Tribal Council*, 940 F.3d

24   1239, 1246 (9th Cir. 1991); *see also Sharber v. Spirit Mountain Gaming*, 343 F.3d 974, 976

25   (9th Cir. 2003) ("The absence of any ongoing litigation over the same matter in tribal courts

26   does not defeat the tribal exhaustion requirement.").  "Exhaustion is prudential; it is required

27   as a matter of comity, not as a jurisdictional prerequisite."  *Boozer v. Wilder*, 381 F.3d 931,

28   935 (9th Cir. 2004).

1    Plaintiff contends that "the *Strate* exception makes inapplicable the usual tribal court

2  exhaustion doctrine." (Doc. # 10 at 26).  The "*Strate* exception" provides that exhaustion is

3  not required "'[w]hen ... it is plain that no federal grant provides for tribal governance of

4  nonmembers' conduct on land covered by *Montana*'s main rule,' so the exhaustion

5  requirement 'would serve no purpose other than delay.'" *Nevada v. Hicks*, 533 U.S. 353, 369

6  (2001) (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 459-60, n.14 (1997)).[1]   When

7  determining "whether it is plain that the tribal court lacks jurisdiction," a court considers

8  whether "jurisdiction is colorable or plausible." *Elliott v. White Mountain Apache Tribal*

9  *Court*, 566 F.3d 842, 848 (9th Cir. 2009) ("If jurisdiction is colorable or plausible, then the

10  exception does not apply and exhaustion of tribal court remedies is required.") (quotations

11  omitted).

12    The Court of Appeals for the Ninth Circuit has held that "threats to water rights may

13  invoke inherent tribal authority over non-Indians" pursuant to *Montana*'s second exception.

14  *Montana v. U.S. Envtl. Prot. Agency*, 137 F.3d 1135, 1141 (9th Cir. 1998) ("*Montana II*").  "A

15  tribe retains the inherent power to exercise civil authority over the conduct of non-Indians on

16  fee lands within its reservation when that conduct threatens or has some direct effect on the

17  health and welfare of the tribe.  This includes conduct that involves the tribe's water rights."

18  *Id.* (quotation omitted).  Similarly, tribes have a "strong interest" in "prevention of forest fires,

19  and preservation of its natural resources" which could plausibly support tribal court

20  jurisdiction pursuant to *Montana*'s second exception.  *Elliott*, 566 F.3d at 850; *cf. id.* ("[E]ven

21

22    [1] There is a second exception to the exhaustion requirement, which applies "when an
assertion of tribal court jurisdiction is 'motivated by a desire to harass or is conducted in bad
faith.'"  *Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 847 (9th Cir. 2009)

23  (quoting *Nevada*, 533 U.S. at 369).  In opposition to the Motion to Dismiss, Plaintiff has not
contended that this exception is applicable, although Plaintiff's Complaint alleges that

24  Defendants "have attempted to implement and effectuate, a plan ... to acquire ... 'on the cheap'
[Plaintiff's] five-acre parcel" (Doc. # 1 ¶ 14).  Even if Plaintiff had properly raised the

25  argument in opposition to the Motion to Dismiss, the evidence in the record is not sufficient
to "prove[] that enforcement of the statutory scheme was the product of bad faith conduct or

26  was perpetuated with a motive to harass." *A & A Concrete, Inc. v. White Mountain Apache*
*Tribe*, 781 F.2d 1411, 1417 (9th Cir. 1986) ("This exception to the exhaustion requirement ...

27  may not be utilized unless it is alleged and proved that enforcement of the statutory scheme
was the product of bad faith conduct or was perpetuated with a motive to harass.  No such

28  proof appears in the record."); *see also Elliott*, 566 F.3d at 847 (exception inapplicable because
"there is no evidence of bad faith or harassment in the record").

1   if we applied the two *Montana* exceptions without regard to the Supreme Court's instruction

2   that ownership of the land may be dispositive in some cases, we reach the same conclusion:

3   In the circumstances of this case, we cannot say that the tribal court plainly lacks jurisdiction.")

4   (holding that it is not plain that a tribal court lacked jurisdiction over a nonmember for

5   violating tribal regulations which prohibit setting a fire without a permit on tribal land).

6          Defendants have submitted evidence indicating that conduct on Plaintiff's property

7   "pose[] inherent threats to the shallow, unconfined aquifer which is the sole water source for

8   the Tribe's water system and Tribal member groundwater wells." (Minjares Decl. ¶ 28, Doc.

9   # 8-1).  Defendants also have submitted evidence that "[c]onditions on the Subject Property

10  during the [2007] Poomacha Fire contributed to the spread of wildfire from that property to

11  Tribal lands across the street on which the Casino is located." (Mazzetti Decl. ¶ 12, Doc. # 9;

12  *see also* Allen Decl. ¶ 17, Doc. # 8).  Although Plaintiff disputes this evidence, Defendants

13  have shown that conduct on Plaintiff's property plausibly could threaten the Tribe's

14  groundwater resources and could contribute to the spread of wildfires on the reservation.  This

15  showing is sufficient to require exhaustion, given the relief requested by the Complaint.

16         In the first cause of action, Plaintiff requests that the Court "declare and adjudge that

17  neither the Rincon Tribe nor the above-named Tribal defendants presently have, nor in the

18  future could as a matter of law have, any regulatory or adjudicative authority of any nature

19  whatever over or as to plaintiff and/or over or as to subject property." (Doc. # 1 ¶ 23(d)).  The

20  second cause of action seeks the issuance of "a permanent injunction requiring and ordering

21  that the above-named Tribal defendants desist and refrain from any further actual or attempted

22  enforcement, prospectively and in the future, of any and all purported Rincon Tribe regulatory

23  or adjudicative authority over or as to plaintiff and/or over or as to subject property." *Id*. ¶ 29.

24  The declaratory and injunctive relief requested make no exception for "conduct [that] threatens

25  or has some direct effect on the political integrity, the economic security, or the health or

26  welfare of the tribe." *Montana*, 450 U.S. at 565.

27         Given the breadth of the declaratory and injunctive relief requested by Plaintiff, there

28  is a "colorable or plausible" claim to tribal regulatory and tribal court jurisdiction pursuant to

1  *Montana*'s second exception.  *Elliott*, 566 F.3d at 848; *cf. Montana II*, 137 F.3d at 1141.

2  Although *Montana*'s second exception should not "be construed in a manner that would

3  swallow the rule or severely shrink it," *Plains Commerce Bank*, 128 S. Ct. at 2720, neither

4  should it be construed in a manner that would eliminate the exception entirely.  Because tribal

5  court jurisdiction is plausible, "principles of comity require [federal courts] to give the tribal

6  courts a full opportunity to determine their own jurisdiction in the first instance." *Elliott*, 566

7  F.3d at 850-51.  The Court concludes that Plaintiff must exhaust tribal remedies prior to

8  asserting his claims in this Court.

9  The Court has the discretion to dismiss or stay this action while Plaintiff exhausts his

10  tribal court remedies.  *See Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 948

11  (9th Cir. 2008) ("As a matter of discretion, a district court may either dismiss a case or stay the

12  action while a tribal court handles the matter.") (citing *Nat'l Farmers*, 471 U.S. at 857).

13  Plaintiff has not asserted that the statute of limitations would bar Plaintiff from asserting his

14  claims in a later-filed action post-exhaustion. *Cf. Sharber*, 343 F.3d at 976 ("[D]ismissal might

15  mean that [plaintiff] would later be barred permanently from asserting his claims in the federal

16  forum by the running of the applicable statute of limitations.  Under the circumstances, the

17  district court should have stayed, not dismissed, the federal action pending the exhaustion of

18  tribal remedies.").  Defendants' attempts to assert regulatory jurisdiction over Plaintiff and the

19  property at issue are ongoing, and Plaintiff requests only prospective relief in the Complaint.

20  RCMA has filed an essentially identical Complaint against the same Defendants in

21  another action pending before this Court, *Rincon Mushroom Corporation of America v.*

22  *Mazzetti*, S.D. Cal. Case No. 09cv2330-WQH-POR.  In *RCMA* action, issues have been raised

23  concerning RCMA's standing.  If the Court dismisses each action, Plaintiff and RCMA (who

24  are represented by the same counsel) will have the opportunity to refile any claims which

25  remain after exhaustion in a single action, which potentially would eliminate any doubt

26  regarding standing and would better conserve judicial resources.  The Court finds that this

27  weighs in favor of dismissal.

28  The Court takes judicial notice of the civil complaint filed against Plaintiff and RCMA

- 9 -

10cv591 WQH (POR)

1   in the Intertribal Court of Southern California by the Rincon Tribe on July 30, 2010.  (Doc. #

2   15-1, Ex. A).  The complaint pending in Tribal Court raises issues related to the claims in

3   Plaintiff's Complaint in this action.  The fact that there is a pending proceeding in Tribal Court

4   weighs in favor of dismissal of this action.  *See Atwood*, 513 F.3d at 948 ("Because the parties

5   do not dispute that the ... issue is still pending before the Tribal Court, the district court

6   properly exercised its discretion and dismissed this case due to Plaintiff's failure to exhaust

7   tribal court remedies.").

8          The Court concludes that this action should be dismissed due to Plaintiff's failure to

9   exhaust tribal remedies.

10  **IV.    Conclusion**

11         IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for failure to exhaust

12  tribal remedies is GRANTED.  (Doc. # 7).  Except as discussed above, the Court does not

13  reach the other issues raised by the Motion to Dismiss.

14         The Ex Parte Application Requesting Judicial Notice of Supplemental Authorities (Doc.

15  # 14) and Ex Parte Application for Request for Judicial Notice (Doc. # 15) are GRANTED.

16         The Clerk of the Court shall close this case.

17

18  DATED:  September 21, 2010

19                                                          _William Q. Hayes_____

20                                                          **WILLIAM Q. HAYES**
                                                            United States District Judge

21

22

23

24

25

26

27

28